1
2
JOHN BURTON, State Bar No. 86029
jb@johnburtonlaw.com
**THE LAW OFFICES OF JOHN BURTON**
128 North Fair Oaks Avenue
3
Pasadena, California 91103
Telephone: (626) 449-8300
4
Facsimile: (626) 449-8197

5
6
T. KENNEDY HELM, IV, State Bar No. 282319
kennedy@helmlawoffice.com
**HELM LAW OFFICE, PC**
7
644 40th Street, Suite 305
Oakland, California 94609
8
Telephone: (510) 350-7517
Facsimile: (510) 350-7359

9
10
Attorneys for Plaintiff Joyce Byers, Individually and
as Successor-in-Interest for Sherman Herbert Silva, Deceased

11

12
**UNITED STATES DISTRICT COURT**

13
**EASTERN DISTRICT OF CALIFORNIA**

14
**SACRAMENTO DIVISION**

15

16
JOYCE BYERS, Individually and as Successor
in Interest for SHERMAN HERBERT SILVA,
17
deceased

18
                    Plaintiff,

19
        vs.

20
COUNTY OF BUTTE, a municipal
corporation; BUTTE COUNTY SHERIFF'S
21
OFFICE; KOREY L. HONEA, BUTTE
COUNTY SHERIFF, and DOES 1–20,
22

23
                    Defendants.

24
25
26

**Case No.**

**COMPLAINT FOR DAMAGES FOR WRONGFUL DEATH**

**DEMAND FOR JURY TRIAL**

1. 42 U.S.C. § 1983

2. ADA and RA Violations

3. Cal. Civil Code § 52.1—Bane Act

4. Negligence and Breach of Mandatory Duties

27
28

COMPLAINT AND JURY DEMAND
Case No.

**JURISDICTION**

1.      This is a civil-rights, wrongful-death and survival action arising from Defendants' deliberate indifference to the serious risk of physical harm to detainee Sherman Herbert Silva, resulting in his death at the hands of another inmate on March 7, 2021 at the Butte County Jail. This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourteenth Amendment to the United States Constitution, and the laws and Constitution of the State of California. Accordingly, 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights) provide subject-matter jurisdiction. Plaintiff's state-law claims form part of the same case and controversy and are within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367.

**VENUE AND INTRADISTRICT ASSIGNMENT**

2.      Venue is proper in the United States District Court for the Eastern District of California pursuant to 28 U.S.C. § 1391 because the events and omissions complained of occurred in Oroville, Butte County, California. Pursuant to Eastern District Civil Local Rule 120(d) this action is properly assigned to the Sacramento Division of the United States District Court for the Eastern District of California.

**PARTIES**

3.      The Decedent is Sherman Herbert Silva, a pre-trial detainee. At the time of his death, he was 43 years' old, unmarried, and had no children. Mr. Silva was disabled, and suffered from severe mental illness, including schizophrenia and schizoaffective disorder.

4.      Plaintiff Joyce Byers is the mother of Sherman Herbert Silva. She is an adult competent to bring these claims both individually and as the Successor in Interest for Decedent pursuant to California Civil Procedure Code § 377.30. Her declaration pursuant to § 377.32 is filed herewith.

5.      Defendant Korey L. Honea was the Sheriff of Butte County at all times relevant to the acts and omissions described herein. As the Sheriff, Defendant Honea was the highest-level official and final policy maker within the Butte County Sheriff's Office (BSCO), which operates the Butte County Jail (BCJ). Defendant Honea was legally responsible for oversight of operations at the

COMPLAINT AND JURY DEMAND
Case No.                                                                                                                      1

BCJ, implementation of BCSO policy and procedures, staff training, and the safety and security of arrestees and detainees housed at the BCJ, and the supervision of all other individual defendants employed at the BCJ. Defendant Honea is sued in his individual capacity.

6.      Does 1 to 20 are unnamed because their identities have yet to be ascertained. Plaintiff is informed and believes that each is an employee or agent of the County or the BCSO and was involved in one or more deprivations of Plaintiff's and Decedent's federal or state constitutional or statutory rights either as a direct participant or supervisor.

7.      Each individually named defendant and each Doe defendant acted under color of state law and within the scope of his or her agency and employment with the County and the BCSO, and in some manner contributed to the death of Decedent, or otherwise caused the deprivation of Decedent's rights and other harm as alleged below.

8.      Plaintiff is informed and believes, and thereon alleges, that each Defendant was at all material times an agent, servant, employee, partner, joint venturer, co-conspirator, and/or alter ego of the remaining Defendants, and in doing the acts and omissions alleged, was acting within the course and scope of those relationships. Plaintiff is further informed and believes and thereon alleges that each of the Defendants herein gave consent, aid, and assistance to each of the remaining Defendants, and ratified and authorized the acts or omissions of each Defendant as alleged. At all material times, each Defendant was jointly engaged in tortious activity and an integral participant in the conduct described herein, resulting in the deprivation of Plaintiff's and Decedent's constitutional rights and other harm.

9.      Plaintiff brings these claims pursuant to California Code of Civil Procedure § 377.20 and § 377.60, which provide for survival and wrongful-death actions and are incorporated into the 42 U.S.C. § 1983 claims through 42 U.S.C. § 1988. Plaintiff also brings her claims individually and on behalf of Decedent on the basis of 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, California Civil Code § 52.1, and other provisions of federal and state civil-rights law.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

10.     Plaintiff timely and properly filed a claim pursuant to California Government Code § 910. The claim was denied on August 11, 2021, and this action is timely filed within all applicable statutes of limitation. Plaintiff fully exhausted her administrative remedies as to all state claims.

## FACTS

### A. General Allegations Regarding Policy and Practice

11.     Between 2005 and 2019, 13 pretrial detainees died in the BCJ; on information and belief, these deaths were due to County and BCSO staff failing to properly classify inmates, to segregate inmates who are at risk of harm, or who pose danger to other inmates, and to adequately check on or otherwise monitor inmates at the BCJ. These failures have allowed inmates to attack other inmates, causing serious injury and, in this case, death.

12.      On March 7, 2019, pretrial detainees Clarence Beaver and Joseph Stillwell were both beaten by another pretrial detainee, Antonio Hernandez. As a result of the beatings, Mr. Beaver suffered facial and orbital fractures and Mr. Stillwell suffered a left kneecap fracture and a left foot fracture. Messrs. Beaver and Stillwell have sued the County and BSCO for their injuries, and the County has received notice of the lawsuit.

13.     On July 29, 2020, Ivan Bassett, an elderly pretrial detainee, was beaten by another pretrial detainee, Orrin Colbourn, causing Mr. Bassett to suffer injuries requiring surgery. Mr. Basset has sued the County and BCSO for his injuries, and the County has received notice of the lawsuit.

14.     Defendants County and BCSO, with deliberate indifference, gross negligence, and reckless disregard for the safety, security, and constitutional and statutory rights of Plaintiff, Decedent, and all persons similarly situated, maintained, enforced, tolerated, permitted, acquiesced in, and applied policies or practices of, among other things:

      a.  Through deliberate indifference, subjecting persons in the BCJ to violence perpetrated by other detainees, arrestees, or inmates;

      b.  Selecting, retaining, and assigning deputies, jailors civilian personnel, and civilian volunteers to their jails who exhibit deliberate indifference and reckless disregard for

COMPLAINT AND JURY DEMAND
Case No.

3

the safety, security, and constitutional and statutory rights of detainees, arrestees, and inmates;

c. Failing to take adequate security measures to protect detainees, arrestees, and inmates from unnecessary harm, including but not limited to, the following:

    i. Separating detainees and arrestees from potentially violent or dangerous inmates;

    ii. Using of security cameras to monitor violence within jail cells;

    iii. Training deputies, civilian personnel, and civilian volunteers, to monitor detainees and inmates and immediately respond to acts of violence, or threats of violence;

    iv. Monitoring drunken detainees who are unable to care for themselves;

    v. Recognizing potentially volatile situations and circumstances that are likely to erupt into violence; and

    vi. Properly segregating and protecting mentally-ill inmates and others at risk of violence from other inmates;

d. Failing to adequately train, supervise, and control deputies, jailers, civilian employees or volunteers in generally accepted law-enforcement policies and procedures relating to housing classification of arrestees and detainees;

e. Failing to adequately discipline deputies, jailors or civilian employees involved in misconduct;

f. Condoning, and encouraging deputies, jailors and civilian employees in the belief that they can violate the rights of persons such as the Plaintiff and Decedent in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits; and

g. Failing to maintain California Code of Regulations Title 15 and Title 24 standards for cells, including but not limited to, by lacking proper audio and video monitoring, failing to maximize or otherwise ensure visual supervision or direct visual

observation of inmates by staff, and by lacking the ability of inmates to summon assistance when necessary for protection from other inmates, or for other emergencies.

15.     Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants County and BCSO, and their respective decision makers, including but not limited to Defendant Honea, ordered, authorized, acquiesced in, tolerated, or permitted other defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs set forth in the preceding paragraphs and subparagraphs. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by Defendants or on Defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and constitutional and statutory rights of Plaintiff and Decedent.

**B.  The Incident**

16.     In the early morning of March 7, 2021, in a sobering cell in the BCJ's booking area, Mr. Silva was murdered by a cellmate, twenty-three-year-old Michael Borgman.

17.     The evening before, Mr. Borgman was arrested for driving under the influence of alcohol, and Mr. Silva was arrested for a parole violation while acting out due to mental illness. Both men were booked into the BCJ.

18.     Although Mr. Silva was not under the influence of any substance, Defendants locked him in a a sobering cell in the BCJ's booking area with Mr. Borgman and two other arrestees.

19.     On information and belief, Defendants' jail staff knew of Mr. Silva's extensive mental-health history from numerous prior bookings and incarcerations, and they knew that by housing him with Mr. Borgman, who was highly intoxicated, they were exposing him to a unreasonable risk of serious bodily injury. Pursuant to generally accepted jail standards, Mr. Silva, a mentally-ill person, should not have been put in the sobering cell with Mr. Borgman, a highly intoxicated person.

20.     On information and belief, while in the sobering cell Mr. Silva may have been acting out, though not violently, due to ongoing mental-health issues including but not limited to schizophrenia and/or schizoaffective disorder.

COMPLAINT AND JURY DEMAND
Case No.

5

21.     Defendants' jail staff failed to conduct appropriate cell checks, and they failed to properly monitor Mr. Silva and Mr. Borgman, giving Mr. Borgman the opportunity to attack Mr. Silva and kill him.  They failed to perform safety checks, consisting of direct visual observation of those in the sobering cell, at least every 30 minutes, *on an irregular schedule*. As a result, Mr. Borgman knew that he would be free to attack Mr. Silva. The sobering cell lacked direct audio and visual monitoring, and Mr. Silva had no way to summon assistance.

22.     At some point in the early morning of March 7, another detainee alerted a correctional deputy to an altercation in progress inside the sobering cell.  A properly designed, equipped and staffed jail would have not needed an inmate to summon help for an inmate in a sobering cell.

23.     A correctional deputy saw Mr. Borgman's arm around Mr. Silva's neck and head. On information and belief, at no time during the vicious attack of Mr. Silva did any jail staff attempt to stop it. Jail staff, including those in charge of monitoring and supervising the area where the assault occurred, actually knew or should have known that the Decedent would be attacked and that there existed a substantial risk of harm to the Decedent. Jail staff had the means and opportunity to prevent the attack from occurring or continuing but deliberately failed to do so and were deliberately and wantonly indifferent to the Decedent's safety.

24.     At about 2:57 a.m., Wellpath employee Ashlee Runnels saw Mr. Silva "lying face down & unresponsive on the floor" of the sobering cell. He had no pulse, and Ms. Runnels asked jail staff to call EMS Code 3. Ms. Runnels began providing CPR; she noted blood coming out of Mr. Silva's nose.

25.     Ms. Runnels, Wellpath employee Daniela Shoemaker, and BCSO jail staff, whose identities are not yet known to Plaintiff, provided continuous CPR to Mr. Silva. Ms. Runnels and Ms. Shoemaker provided continuous breaths to Mr. Silva via an AMBU bag.

26.     At about 3:02 a.m., Wellpath employee J. Hunter brought in an AED to the sobering cell and applied the AED. Ms. Runnels noted that Mr. Silva's pupils were 8mm, non-reactive to light. The AED advised no shock. Jail and medical staff continued to provide CPR for ten more minutes, and the AED was checked periodically, but it continued to advise no shock.

27.     At about 3:09 a.m., Cal Fire arrived to assist. At about 3:12 a.m., EMS arrived and assumed all care. At 3:30 a.m., EMS pronounced Mr. Silva dead.

28.     Dr. Ifran Chaudhry, M.D., forensic pathologist for the County of Sacramento Coroner found on autopsy that Mr. Silva had the following injuries: (1) Neck compression (A) Hemorrhage of anterior neck and back muscles. He noted the following evidence of traumatic injuries: A 3/6" linear laceration below the right nostril; anterior dissection of the neck muscles revealing an area of hemorrhage on the posterior surface of the left sternocleidomastoid muscle measuring 3 centimeters in greatest dimension; posterior dissection of the back muscles revealing a hemorrhage on the right upper trapezius muscle; a focal area of hemorrhage in the left anterior tongue; three (3) linear abrasions measuring from 7/16" to 1" on the right dorsal hand; a 1/6 inch abrasion is on the right dorsal 3rd digit; and a 1" healing linear scab is on the right anterior forearm. The autopsy further revealed blood coming from Mr. Silva's nose and slight pooling above the right eyebrow, and that Mr. Silva had petechial hemorrhaging in both eyes.

## DAMAGES

29.     Plaintiff in her individual capacity as Decedent's sole heir and successor in interest sustained wrongful-death damages in an amount in accordance with proof.

30.     Plaintiff in her various capacities has incurred medical, burial, and other related expenses as a result of Decedent's death.

31.     Decedent sustained general damages, including pre-death pain and suffering, and the loss of enjoyment of his life, in an amount in accordance with proof.

32.     In doing the foregoing wrongful acts, the individual Defendants, and each of them, acted in reckless and callous disregard for the constitutional rights of Decedent and Plaintiff. The wrongful acts, and each of them, were willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual defendant (but not the entity defendants, which are immune from such damages) in an amount adequate to punish the wrongdoers and to deter future misconduct.

COMPLAINT AND JURY DEMAND
Case No.                                                                                          7

## FIRST CAUSE OF ACTION

### (42 U.S.C. § 1983)

33.     Defendants Does 1–20 acting under the color of state law in their individual capacities, deprived Decedent and Plaintiff of the rights, privileges, and immunities secured by the Fourteenth Amendment to the United States Constitution by, among other things, being objectively and subjectively deliberately indifferent to, and failing to protect Decedent from, violence at the hands of other inmates.

34.     Defendants County, BCSO, Does 1–20, and Honea, acting in his individual capacity, with deliberate indifference and in reckless disregard for the consequences, promulgated, tolerated, and applied the policies, practices, and usages alleged above, which were a moving force that deprived Decedent of rights, privileges, and immunities secured by the Fourteenth Amendment to be free from a substantial risk of serious harm while a pretrial detainee at the BCJ.

35.      Defendants, acting under color of state law, deprived Plaintiff of her right to a familial relationship with the Decedent without due process of law in violation of the Fourteenth Amendment by their conscious-shocking deliberate indifference to Decedent's security and safety, causing Decedent's death.

36.     Despite knowledge of the substantial risk of severe harm Mr. Borgman posed to the Decedent, Defendants did not take reasonable available measures to abate the risk of injury Mr. Borgman posed to him, even though reasonable officers in the circumstances would have appreciated the high degree of risk involved—making the consequences of the Defendants' conduct obvious. Defendants knew or should have known that Mr. Borgman posed a serious and immediate threat of death or great bodily injury to Decedent, and they knew or should have known that Decedent was in grave danger. Defendants further had a duty to provide Decedent with reasonable security, including a transfer to safer housing where he was not in grave danger from a cellmate, and other appropriate precautions to ensure a cellmate did not murder him with his bare hands.

37.     Defendants knew or should have known that Decedent required an immediate transfer away from Mr. Borgman. Defendants knew or should have known that Decedent could not

protect himself from his violent and dangerous cellmate Mr. Borgman. Defendants knew or should have known—but disregarded—that Decedent, because of his mental illness, required housing in a cell separate from the other inmates.  These Defendants ignored, delayed, or denied Decedent's urgently needed housing transfer and protection from Mr. Borgman.

38.     Defendants subjected Decedent to their wrongful conduct, depriving Plaintiff and Decedent of rights described herein, knowingly, maliciously, and with conscious and reckless disregard for whether the rights and safety of Plaintiff, individually and on behalf of Sherman Herbert Silva and others, would be violated by their acts and/or omissions.

39.     As a direct and proximate result of Defendants' acts and/or omissions as set forth above, Plaintiff and the Decedent sustained injuries and damages as set forth herein.

40.     The conduct of the individual Defendants sued in their personal capacities entitles Plaintiff in her individual and representative capacities to punitive damages and penalties allowable under 42 U.S.C. § 1983. Plaintiff does not seek punitive damages against Defendants County and BCSO because of governmental immunity.

## SECOND CAUSE OF ACTION

(Title II of the ADA, Title III of the ADA, and the Rehabilitation Act)

41.     Plaintiff in her representative capacity brings this claim against the County and the BSCO.

42.     Congress enacted the Americans with Disabilities Act ("ADA") upon a finding, among other things, that "society has tended to isolate and segregate individuals with disabilities" and that such forms of discrimination continue to be a "serious and pervasive social problem." 42 U.S.C. § 12101(a)(2).

43.     Decedent was a "qualified individual" with a mental illness, disability and medical impairments that limited and/or substantially limited his ability to care for himself and control his mental or physical health condition as defined under the ADA, 42 U.S.C. §  12131(2), and Section 504 of the Rehabilitation Act ("RA") of 1973, 29 U.S.C. § 794; 28 C.F.R. 42.540(k).

44.     Defendant County is a public entity under Title II of the ADA. 42 U.S.C. § 12131(1)(A).  Title II of the ADA applies generally to hospital and jail "services, programs, or activities."  42 U.S.C. § 12132.  Furthermore, respondent superior liability applies to Title II claims.  Defendant County is therefore liable under Title II of the ADA for the unlawful acts of its employees as well as its private-entity contractors.  Under the ADA, Defendant County is mandated to develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities, and to ensure that the personal and civil rights of persons who are receiving services under their aegis are protected.

45.     Title III of the ADA provides in pertinent part that "[i]t shall be discriminatory to afford an individual or class of individuals, on the basis of a disability or disabilities of such individual or class, directly, or through contractual licensing, or other arrangements, with a good, service, facility, privilege, advantage, or accommodation that is different or separate from that provided to other individuals."  42 U.S.C. § 12182(b)(1)(A)(iii).  Under Title III of the ADA, County and the BCSO are mandated not to discriminate against any qualified individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages or accommodations of any place of public accommodation."  42 U.S.C. § 12182(a).

46.     Plaintiff is informed and believes, and thereon alleges, that Defendants County and BCSO receives federal assistance and funds, and are therefore subject to the Rehabilitation Act, 29 U.S.C. § 794.  Defendants County and BCSO are within the mandate of the RA that no person with a disability may be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity."  29 U.S.C. § 794.

47.     At all material times and as described herein, Decedent was an individual with a disability who was otherwise qualified to participate in or receive the benefit of Defendants' services, programs, or activities, including County's and BCSO's jail services, programs, and activities, and was either excluded from participation in or denied the benefits of the County and BCSO services, programs or activities or was otherwise discriminated against, and such exclusion, denial of benefits or discrimination was by reason of his disability.

COMPLAINT AND JURY DEMAND
Case No.

10

48.     As described herein, Defendants County and BCSO failed to reasonably accommodate Decedent's disability in the course of denying him medical and psychiatric care, instead housing him with a drunk and violent inmate, causing him to suffer greater injury in the process than other patients, detainees, or arrestees. County's and BCSO's  failures to accommodate Decedent's disability include but are not limited to, causing the violation of Decedent's rights through all customs, policies, and practices identified above; failing to use lawful and appropriate policies, practices, and procedures to house and treat mentally ill and/or emotionally disturbed persons under the circumstances; failing to provide Decedent with competent and appropriate medical, mental health, and psychiatric care; placing Decedent in a sobering cell with a violent drunk, and without adequate observation or mental-health follow up; failing to develop an effective, integrated, comprehensive system for the delivery of all services to persons with mental disabilities, and to ensure that the personal and civil rights of persons who are receiving services under their aegis are protected; and other failures to provide accommodations as the evidence in this case may show.

49.     As a direct and proximate result of County's and BSCO's violations of the ADA and RA, Decedent sustained serious and permanent injuries and is entitled to damages, penalties, costs and attorneys' fees as set forth herein.

## THIRD CAUSE OF ACTION

(California Civil Code § 52.1—Bane Act)

50.     Plaintiff brings this claim in her capacity as Decedent's Successor in Interest, seeking all statutory, compensatory, special, and punitive damages allowable under California Civil Code § 52.1 that survive Decedent's death.

51.     By their acts, omissions, customs, and policies, Does 1–20, acting in concert, as described above, by way of threat, intimidation, and coercion, and with the specific intent to deprive Decedent of his rights, and in reckless disregard for those rights, did deprive Decedent of rights protected under California Civil Code § 52.1 and the following clearly established rights under the laws and constitutions of the United States and California:

COMPLAINT AND JURY DEMAND
Case No.

a. Decedent's right to protection and to be free from unsafe conditions of confinement and the substantial risk of serious physical harm, as secured by the Fourteenth Amendment to the United States Constitution and the California Constitution, Article 1, Sections 17 and 24;

b. Decedent's right to be free from wrongful government interference with familial relationships, as secured by the Fourteenth Amendment;

c. The right to enjoy and defend life and liberty; acquire, possess, and protect property; and pursue and obtain safety, happiness, and privacy, as secured by the California Constitution, Article 1, Section 1; and;

d. The right to protection from bodily restraint, harm, or personal insult, as secured by California Civil Code § 43.

52. Does 1–20's violation of Decedent's rights through their own intentional and volitional conduct, with the requisite specific intent, and with deliberate indifference to the rights and safety of Decedent, in and of itself constitutes threat, intimidation, or coercion under the Bane Act as interpreted by courts.

53. As a direct and proximate result of Defendants' violation of California Civil Code § 52.1 and of Decedent's rights under the United States and California Constitutions and law, Decedent sustained injuries and damages, and against each Defendant named in this Count, is entitled to damages as set forth above, and punitive damages against all individual Defendants, including all damages and penalties allowed by California Civil Code §§ 52 and 52.1 and California law, three times actual damages, and attorneys' fees.

## FOURTH CAUSE OF ACTION

### (Negligence and Breach of Mandatory Duties)

54. Plaintiff brings this claim individually pursuant to the California wrongful-death statute.

55. At all material times, each of Does 1–20 owed Decedent the duty to act with due care in the execution and enforcement of any right, law, or legal obligation.

COMPLAINT AND JURY DEMAND
Case No.

12

56.     At all material times, each of Does 1–20 owed Decedent the duty to act with reasonable care.

57.     These general duties of reasonable care and due care owed to Decedent by Does 1–20 include but are not limited to the following specific obligations:

      a.  To provide, or cause to be provided, safe conditions of confinement for Decedent;

      b.  To provide, or cause to be provided, protection from violence at the hands of his cellmate;

      c.  To refrain from unreasonably creating danger or increasing Decedent's risk of harm; and

      d.  To transfer Decedent to a different cell or different cellmate that did not pose an immediate threat to him.

58.     Defendants, through their acts and omissions, breached each and every one of the aforementioned duties owed to Decedent.

59.     Moreover, Titles 15 and 24 of the California Code of Regulations impose multiple mandatory duties on entities managing jails, including regulations for sobering cells requiring visual observation along with regular safety checks, audio monitoring and a call button to summon help, and other requirements for the health and safety of inmates. Plaintiff is informed and believes, as alleged above, that Defendants County and BCSO, and their agents and employees, violated one or more mandatory duty imposed by law, and as a consequence the Decedent was killed in the sobering cell by another inmate.

60.     As a direct and proximate result of Defendants' negligence and breaches of mandatory duties, Plaintiff and Decedent sustained injuries and damages, and against each and every Defendant named in this cause of action in their individual capacities are entitled to relief including punitive damages against such individual Defendants

61. Defendants County and BCSO are vicariously liable for the negligence of their employees pursuant to California Government Code § 815.2.

## PRAYER

WHEREFORE, Plaintiff respectfully requests the following relief against each and every Defendant herein, jointly and severally:

1. General and compensatory damages in an amount according to proof;

2. Special damages in an amount according to proof;

3. Exemplary and punitive damages against each individual and Doe defendant, in an amount according to proof;

4. Statutory damages;

5. Costs of suit, including attorneys' fees and a multiplier; and

6. Such other relief as may be warranted or as is just and proper.

Dated: November 15, 2021                 **THE LAW OFFICES OF JOHN BURTON HELM LAW OFFICE, PC**

                                         */s/ T. Kennedy Helm, IV*
                                         By: T. KENNEDY HELM, IV
                                         *Attorneys for Plaintiff*

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury.

Dated: November 15, 2021                 **THE LAW OFFICES OF JOHN BURTON HELM LAW OFFICE, PC**

                                         */s/ T. Kennedy Helm, IV*
                                         By: T. KENNEDY HELM, IV
                                         *Attorneys for Plaintiff*